IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL GEORGE ROSEN,

          Petitioner,

      vs.

MICHAEL MARTELL,[1] Warden (A), Mule Creek State Prison,

          Respondent.

No. 2:08-cv-00284-JWS

MEMORANDUM DECISION

Petitioner Darryl George Rosen, a state prisoner appearing through counsel, has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Rosen is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the Mule Creek State Prison. Respondent has filed an Answer. Rosen has not filed a traverse.

## I. BACKGROUND/PRIOR PROCEEDINGS

Rosen was charged with one count of raping a minor, with a special allegation that appellant tied or bound the victim during commission of the offense (Cal. Penal Code §§ 261(a)(2)/667.61(e)(6)), count one); three counts of felony sexual battery against restrained victims (Cal. Penal Code § 243.4(a); counts two, three, and seven); nine counts of committing assault under color of authority while employed as a peace officer (Cal. Penal Code § 149, counts four, five, eight, nine, ten, twelve, fourteen, fifteen, and sixteen); one count of misdemeanor sexual battery (Cal. Penal Code § 243.4(e)(1), count eleven); two counts of falsely imprisoning through violence, menace, fraud or deceit (Cal. Penal Code § 236, counts thirteen and seventeen); and one count of dissuading a witness (§ 136.1(b)(1), count eighteen). After a trial by jury in the Sacramento County Superior Court, Rosen was found guilty of counts six through

---

[1] Michael Martell, Warden (A), Mule Creek State Prison, is substituted for Rich Subia, Warden, Mule Creek State Prison. Fed. R. Civ. P. 25(d).

nine and fourteen through eighteen, and not guilty of counts ten through thirteen.  The jury failed to reach an unanimous verdict on counts one through five and the trial court declared a mistrial as to those counts.  Rosen was sentenced to a term in state prison of nine years, eight months.

Rosen timely appealed his conviction to the California Court of Appeal, Third District, which affirmed his conviction in a reasoned decision on March 27, 2007, as modified on denial of rehearing on April 16, 2007.[2]  The California Supreme Court granted review and subsequently dismissed review September 12, 2007, citing *People v. Black* (2007) 41 Cal. 4th 799, 62 Cal. Rptr. 3d 569, 161 P.3d 1130 and *People v. Sandoval* (2007) 41 Cal. 4th 825, 62 Cal. Rptr. 3d 588, 161 P.3d 1146.[3]

Rosen timely filed his petition in this Court on February 6, 2008.

## II.  GROUNDS PRESENTED/DEFENSES

In his petition Rosen raises seven grounds:  (1) denial of due process by the introduction of evidence of prior sexual misconduct; (2) insufficiency of the evidence to support conviction for assault by a public officer; (3) insufficiency of the evidence to support conviction of misdemeanor false imprisonment; (4) rejection of evidence that a complaining witness had been previously involved in crimes; (5) ineffective assistance of trial counsel in failing to present impeaching evidence of a complaining witness; (6) sentenced at the upper term in violation of his Sixth Amendment rights under *Cunningham v. California*;[4] and (7) jury misconduct (discussions of case by jurors, alternate jurors, and non-jurors).

Respondent asserts that the first ground is unexhausted.  Respondent raises no other affirmative defenses.[5]

## III.  STANDARD OF REVIEW

Because Rosen filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

---

[2] Originally certified published in part at 56 Cal. Rptr. 3d 444 (Cal. App. 2007).

[3] 163 P.3d 1 (Cal. 2007) and 169 P.3d 97 (Cal. 2007), respectively.

[4] 549 U.S. 296 (2007).

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect or erroneous."[9]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[10]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[11]

---

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[7] *Williams v. Taylor*, 529 U.S. at 412.

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[10] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S. Ct. 1933, 1939 (2007).

[11] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

MEMORANDUM DECISION
*Rosen v. Martell*, 2:08-cv-00284-JWS                           3

In applying this standard, this Court reviews the last reasoned decision by the state court.[12]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[13]

To the extent that Rosen raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[14]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[15]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[16]

## IV.  DISCUSSION

<u>Ground 1:  Introduction of Evidence of Prior Sexual Misconduct.</u>

Rosen argues that under California Evidence Code § 1108 it was error to introduce evidence of a prior incident of sexual misconduct without foundational evidence, through expert testimony, that the prior incident is related to the charged incident.  After a lengthy discussion of the evidence, the California Court of Appeal rejected Rosen's claim holding:

> Evidence Code section 1108 is an exception to the general rule that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a

---

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 504 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[14] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). A federal court must accept that state courts correctly applied state laws.  *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[15] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[16] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

specified occasion." (Evid.Code, § 1101, subd. (a); further section references are to the Evidence Code unless otherwise specified.)

Subdivision (a) of section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352 [which gives the trial court discretion to exclude evidence if its probative value is outweighed by the probability that its introduction would require an undue consumption of time or would create a substantial danger of undue prejudice, confusing the issues, or misleading the jury]."

In a creative argument, defendant asserts that section 1108 allows the introduction of other sexual offenses evidence to show his "disposition" to commit the charged crime, rather than his "character." According to defendant, "character" and "disposition" are distinguishable and refer to different "distinct properties of the human personality," i.e., disposition refers to the "'prevailing aspect of one's nature [a genial disposition],'" whereas character "'is applied to the sum of moral qualities associated with a distinctive individual [a weak character] ... .'" (Italics omitted.) Defendant concedes that evidence of a person's character "is not subject to expert analysis." However, he claims, the "avenue for introduction of evidence of disposition is through a properly qualified expert witness, or in some limited circumstances through the introduction of lay opinion testimony." Thus, he argues, without expert testimony that the evidence of defendant's other sexual offenses shows he "had a predisposition to commit sexually deviant acts with females, ... the other crimes evidence should not have been permitted."

Again, defendant reads something into the statute that does not exist, namely, in the words of his counsel, evidence of other sexual offenses is not admissible "without the filter of a qualified expert opinion."

By enacting section 1101, the Legislature determined that "propensity evidence," i.e., a defendant's "disposition to commit [criminal acts]," ordinarily should be inadmissible "'"not because it has no appreciable probative value, but because it has too much." ... [Citations.]' [Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 911, 912, 915 [89 Cal. Rptr. 2d 847, 986 P.2d 182], original italics.) However, by enacting section 1108, the Legislature determined that in prosecutions for the commission of sexual offenses, "'the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed ... by the policy considerations favoring the admission of such evidence. The Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. [Citation.]' [Citations.]" (21 Cal.4th at pp. 911–912.)

The language of section 1108 does not say that other sex crimes evidence must be introduced by way of expert testimony regarding the defendant's predisposition to commit sexual offenses. (*People v. McFarland* (2000) 78 Cal.App.4th 489, 494 [92 Cal. Rptr. 2d 884] ["section 1108 authorizes evidence of a defendant's uncharged acts in certain cases, but says nothing about opinion evidence regarding character"].)  Nor is such a requirement necessary, because the probative value of other sex crimes evidence is a matter of common sense and common experience; a person need not be an expert to understand that one who commits a sex offense may be predisposed to commit more sex offenses in the future.  It is readily apparent that "'the willingness to commit a sexual offense is not common to most individuals,'" and that sex offenders often are recidivists; thus, the fact that a defendant has committed a prior sexual offense is "'"evidence of the defendant's disposition to commit such crimes, [which has a] bearing on the probability or improbability that [he or she] has been falsely or mistakenly accused of [committing another] such … offense."' [Citation.]"  (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 912.)

Indeed, in a sex crime prosecution, a prosecutor is not allowed to present expert testimony regarding a defendant's predisposition to commit sexual offenses, unless it is offered to rebut similar evidence presented by the defense to show that the defendant is not predisposed to commit such crimes.  (*People v. McFarland*, *supra*, 78 Cal.App.4th at pp. 493–496 [rejecting a claim that § 1108 "authorize[s] … opinion [evidence of] sexual propensity during the prosecution's case-in-chief"; noting, instead, that the statute "authorizes only the 'specific act' variety of character evidence"].)

In another attack on the other uncharged sex crimes evidence, defendant claims that its prejudicial effect outweighed its probative value and, thus, the trial court abused its discretion under section 352 by not excluding the evidence.  According to defendant, the evidence had little probative value for three reasons.  First, he reiterates his claim that the prosecutor's decision not to formally charge defendant with offenses based on the other crimes evidence means the evidence was unreliable. We already have rejected that claim. (See fn. 1, ante.)

To the extent that Rosen argues the Court of Appeal misconstrued California law, it is, as noted above, beyond the purview of this Court on habeas review.  The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[17]  "[T]he Due Process Clause does not permit the federal

---

[17] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

courts to engage in a finely tuned review of the wisdom of state evidentiary rules"[18]  "Errors of state evidentiary law do not entitle one to federal habeas relief unless the alleged error so fatally infected the proceedings as to render them fundamentally unfair."[19]

To the extent that Rosen is raising a due process claim, *i.e.*, that the use of the evidence to establish propensity violates due process, that claim is foreclosed by the Ninth Circuit decision in *Meija v. Garcia*,[20] holding that since there is "no Supreme Court precedent establishing that admission of propensity evidence, as here, to lend credibility to a sex victim's allegations, and thus indisputably relevant to the crimes charged, is unconstitutional.  We cannot say that the California Court of Appeal decision was contrary to clearly established Supreme Court precedent."  In *Meija* the Ninth Circuit also noted that it had previously upheld Federal Rules of Evidence 414—roughly analogous to California Evidence Rule 1108, allowing prior acts of child molestation into evidence—as being consistent with due process requirements.[21]

Rosen is not entitled to relief under his first ground.[22]

Ground 2:  Insufficiency of Evidence (Assault by Public Officer).

Rosen argues that because the alleged victim touched him and she did not claim that he touched or attempted to touch her, or that he threatened her, there was insufficient evidence to convict him on the assault by a public officer charge.  The California Court of Appeal rejected Rosen's arguments, holding (footnote omitted):

> Every public officer who, under color of authority, without lawful
> necessity, assaults or beats any person" is guilty of a crime. (Pen. Code, § 149.)
> An assault includes an unconsented touching of the victim. (1 Witkin & Epstein,

---

[18] *Estelle v. McGuire*, 502 U.S. at 72, quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

[19] *Gonzalez v. Knowles*, 515 F.3d 1006,  (9th Cir. 2008) (internal quotation marks and citation omitted).

[20] 534 F.3d 1036, 1046 (9th Cir. 2008) (referring to *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001).

[21] *Id.*, 534 F.3d at 1047 n.5.

[22] Respondent contends that Rosen has failed to exhaust his state court remedies as to this ground.  The Court need not reach that issue as it may deny the petition on the merits not withstanding a petitioner's failure to exhaust.  28 U.S.C. § 2254(b)(2).

Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, §§ 1, 2, pp. 638–639.)

According to defendant, the evidence does not support his conviction for assaulting S.M. under color of authority and without legal necessity.  This is so, he argues, because it was S.M. who did the touching when she complied with defendant's direction to "grab [his] dick."  In his view, "[t]here was no assault described in [S.M.'s] testimony.  [He] did not touch her, and made no effort to touch her.  He committed no act which would probably and directly (or even indirectly) result in the application of physical force to [S.M.]"

Penal Code section 240 defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Although this section refers to a "violent injury," any wrongful act committed by means of physical force will suffice.  (*People v. McCoy* (1944) 25 Cal.2d 177, 191 [153 P.2d 315]; *People v. Whalen* (1954) 124 Cal. App. 2d 713, 720 [269 P.2d 181].)  "'"The kind of physical force is immaterial; . . . it may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will."'"  (*People v. Bradbury* (1907) 151 Cal. 675, 677 [91 P. 497].)  Without question, an offensive touching, such as the fondling of a person's sexual organs, will support a conviction for assault or battery.  (*People v. Bard* (1968) 70 Cal.2d 3, 6 [73 Cal. Rptr. 547, 447 P.2d 939].)

"A defendant can commit a battery indirectly by causing the force to be applied to the person of another [citation] and thus can be guilty of indirect assault as well."  (*People v. Wright* (1996) 52 Cal.App.4th 203, 210, fn. 17 [59 Cal. Rptr. 2d 316].)  As explained in *Commonwealth v. Stratton* (1873) 114 Mass. 303: "Although force and violence are included in all definitions of assault, or assault and battery, yet, where there is physical injury to another person, it is sufficient that the cause is set in motion by the defendant, or that the person is subjected to its operation by means of any act or control which the defendant exerts."  (*Id.* at p. 305 [upheld a conviction for assault where the defendant delivered to the victim figs that contained a foreign substance and the victim ate the figs and became ill].)

Accordingly, if by coercion a defendant causes an unconsented physical touching of a victim, the defendant is guilty of assault and battery even though the defendant does not do the touching.  For example, causing force to be applied to a victim by compelling the person to jump from a moving car is the indirect application of force sufficient for an assault and battery.  (1 Witkin & Epstein, Cal. Criminal Law, supra, § 13, p. 646.) The fact that the victim applied to himself or herself the force that resulted in injury is immaterial if the force was applied against the victim's will because the defendant demanded it and the victim felt compelled to comply. (Cf. *People v. Grant* (1992) 8 Cal.App.4th 1105, 1112 [10 Cal. Rptr. 2d 828] ["There are many situations where one is compelled, i.e., forced, to do something against one's will but the compulsion does not involve

personal violence or threats of personal violence.  This is especially true when the person involved in the compulsion is an authority figure or posing as a person in authority.  The force is a psychological force compelling the victim to comply with the orders of the authority figure."]; see also *People v. Mickle* (1991) 54 Cal.3d 140, 175–176 [284 Cal.Rptr. 511, 814 P.2d 290] [for the purposes of Pen. Code, § 288, subd. (a), a person is guilty of a lewd touching if he or she compels the victim to do the touching; *People v. Meacham* (1984) 152 Cal.App.3d 142, 152–154 [199 Cal.Rptr. 586]; *People v. Austin* (1980) 111 Cal.App.3d 110, 114–116 [168 Cal.Rptr. 401].)

Here, defendant did not use physical force on S.M. to get her to touch his penis.  Instead, he exerted psychological coercion by virtue of his position as a police officer and her situation as a prostitute subject to arrest. S.M. testified she complied with defendant's commands because she was afraid he would take her to jail if she refused.  This coercive force was just as effective as if defendant had grabbed S.M.'s hand and forced it onto his penis, as he did with victims L.M. and D.C.  (See *People v. Grant*, *supra*, 8 Cal.App.4th at p. 1112.)  Although in this instance, S.M. was the person who did the touching, it cannot reasonably be said that her being coerced into touching defendant's penis was not offensive to S.M.

For these reasons, defendant's act--under color of authority and without lawful justification--of compelling an offensive touching with S.M.'s hand constituted a violation of Penal Code section 149.

As stated by the Supreme Court in *Jackson v. Virginia*,[23] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This court must, therefore, determine whether the decision by the California courts on the merits unreasonably applied *Jackson*.

Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.  That such evidence exists is clearly established by the record in this case.

---

[23] 443 U.S. 307, 319 (1979) (emphasis in the original).

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[24]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[25]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[26]

For the most part, Rosen's arguments do not address sufficiency of the evidence.  Instead, Rosen argues that the California Court of Appeal erred in its interpretation of the scope of California Penal Code § 149.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[27]  This principle applied to federal habeas review of state convictions long before AEDPA.[28]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[29]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[30]

---

[24] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[25] *Jackson*, 443 U.S. at 324 n.16.

[26] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[27] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[28] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[29] *See Bradshaw,* 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[30] *Id.* at 76

A determination of state law by a state appellate court is also binding in a federal habeas action.[31]  This is especially true where, as here, the highest court in the state has denied review of the lower court's decision.[32]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[33]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[34]

As the second ground raised by Rosen is not cognizable in this Court in a federal habeas proceeding, Rosen is not entitled to relief under that ground.

Ground 3:  Insufficiency of the Evidence (Misdemeanor False Imprisonment).

Rosen argues that because there is no evidence of physical restraint there was insufficient evidence to support the verdict of the misdemeanor false imprisonment, Count Seventeen.  The California Court of Appeal rejected Rosen's argument, holding:

> Defendant contends there is insufficient evidence to support his conviction for misdemeanor false imprisonment of S.M.  This is so, he argues, because a conviction for false imprisonment requires proof S.M. was physically restrained, and the record contains no such evidence.  We disagree.
>
> "False imprisonment is the unlawful violation of the personal liberty of another."  (Pen. Code, § 236.)  "'In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.'"  (*People v. Agnew* (1940) 16 Cal.2d 655, 659-660.)

---

[31] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[32] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 419 F.3d 1083, 1087 (9th Cir. 2005) (same).

[33] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[34] *See Pulley v. Harris, supra.*

Felony false imprisonment requires proof that the offense was effected by "violence, menace, fraud, or deceit."  (Pen. Code, § 237, subd. (a).)  However, to support a charge of misdemeanor false imprisonment, it is necessary only to prove the victim was "'restrained of his liberty without any sufficient complaint or authority thereof, and it may be accomplished by words or acts . . . which such individual fears to disregard.'"  (*People v. Haney* (1977) 75 Cal.App.3d 308, 313.)  The demand of an authority figure, such as a police officer, can constitute the restraint necessary for false imprisonment.  (*People v. Grant*, *supra*, 8 Cal.App.4th at p. 1112.)

While S.M. was "working the strip" as a prostitute, defendant called her over to his patrol car.  He was in uniform and wearing a badge. S.M. complied with his command because she believed that "if [she] didn't, he would have thought [she] was resisting arrest or ignoring him . . . ."  When S.M. got to the patrol car, defendant directed her to lean in the window and "grab [his] dick." Again, she complied.  The jury reasonably could conclude that because defendant was an authority figure over a person who knew she was subject to arrest for prostitution, defendant exerted psychological force to compel S.M. to comply with his orders.  Because he was seeking sexual gratification, he had no lawful purpose in forcing S.M. to remain by his patrol car. She was therefore restrained for purposes of misdemeanor false imprisonment.

Rosen is not entitled to relief under his third ground for the same reasons as stated above with respect to his second ground.

Ground 4:  Rejection of Evidence (Prior Crimes of Complaining Witness).

Rosen argues that the trial court erred in refusing to admit evidence that one of the complaining witnesses had been involved a string of burglaries for which she had been charged, but had not yet been tried.  In rejecting Rosen's arguments, the Court of Appeal held:

Defendant was convicted of assault by a public officer (count four) and two counts of sexual battery (counts two and three), based primarily on the testimony of D.C.  He contends the trial court erred in excluding impeachment evidence in the form of a string of residential burglaries for which D.C. was being prosecuted.  While acknowledging the court allowed the introduction of evidence that D.C. was convicted of other earlier crimes, defendant contends the burglary evidence would have rebutted her claim at trial that she had reformed. We are not persuaded.

In rejecting the proffered evidence, the trial court cited section 352, which permits the exclusion of relevant evidence where "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of

confusing the issues, or of misleading the jury." The court concluded that it would be unfair to present evidence of the burglary charges against D.C. because those charges were still pending and she would have had to waive her Fifth Amendment right in order to respond to the evidence.

An evidentiary determination made pursuant to section 352 is reviewed under an abuse of discretion standard. (*People v. Williams* (1997) 16 Cal.4th 153, 213.) "A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65.) However, "'section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of significant probative value to his defense.' . . . [Citations.]" (*People v. Babbit* (1988) 45 Cal.3d 660, 684; original italics.)

Defendant disputes the prosecutor's claim that introduction of the proffered evidence would have led to a mini-trial of the burglary charges against D.C. In defendant's view, this concern was illusory because the defense and prosecution were in agreement that D.C. committed the burglaries; otherwise, defendant argues, "the District Attorney would not have charged her."

This argument does not help defendant because the trial court did not rely on this factor as a basis for exercising its discretion to exclude the evidence. It did so because, in the court's words, "it would be unfair to offer evidence of the underlying conduct since those charges are still pending and since the witness has a Fifth Amendment right. She's not able to really respond."[3]

According to defendant, the trial court's concern about D.C.'s Fifth Amendment right was misplaced because she was not a party to this case and was not entitled to a false aura of veracity. But he fails to explain how this has any bearing on D.C.'s Fifth Amendment right against self-incrimination. As for a false aura of veracity, this was hardly the situation. The jury was told that D.C. was charged with the burglaries. Evidence also was introduced that in December 2003, D.C. and her father stole video games from Target to get money to buy drugs. D.C. testified that she first got in trouble with the law for petty theft at the age of 13 or 14 and that she received stolen credit cards at the age of 15. She also had failed to appear in court.

Finally, we turn to defendant's suggestion that the evidence was necessary to rebut D.C.'s claim at trial that she had reformed. However, she made no such claim. During cross-examination, D.C. acknowledged telling prosecution investigator Kimberley Clark that D.C. planned to go to college, to play basketball, to join the Army or Navy, to stay away from Sacramento, and to make a new start. But D.C. further testified that she had returned to Sacramento, had

not joined the Army or Navy, had not gone to college, and was not playing
basketball.

In sum, the trial court did not abuse its discretion in excluding details
about burglaries allegedly committed by D.C. In any event, exclusion of the
evidence did not harm defendant because the other impeachment evidence was
sufficient to call D.C.'s credibility into question.

---

[3] In any event, it is readily apparent to us that introduction of the evidence could
have resulted in a time-consuming trial within a trial.  The court permitted
evidence that charges were pending against D.C. for the burglaries.  It explained
that such evidence was relevant to whether D.C. was testifying in order to gain
favorable treatment on those charges.  In his opening statement, the prosecutor
told the jury: "The first five counts involve a young woman by the name of [D.C.].
[¶] You're going to meet [D.C.] during the course of this trial. [D.C.] will be in
custody.  She has been arrested recently for burglary and possession of stolen
property.  She is a criminal.  She is also a thief."  During trial, D.C. testified she
was currently in jail on charges of burglary and receiving stolen property.  But
defendant wanted more.  He sought to present evidence about the burglaries and
D.C.'s involvement to prove she did in fact commit them.  Therefore, even if
neither side had an interest in presenting a defense, introduction of the evidence
could have involved presentation of an entire prosecution case regarding the
multiple burglaries.

---

In addition to the general rules regarding review of state evidentiary rulings discussed in
connection with the first ground, it is well settled that, under the Sixth Amendment, an accused
has the right to present witness, testimony, and other evidence in his defense.  However, "[t]he
accused does not have an unfettered right to offer testimony that is incompetent, privileged, or
otherwise inadmissible under standard rules of evidence."[35]  States have considerable latitude
under the Constitution to establish rules excluding evidence from criminal trials.[36]  This right is,
however, abridged by rules of evidence that infringe upon a weighty interest of the accused and
are arbitrary or disproportionate to the purposes the rules are designed to serve.[37]  "Thus, a trial
judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice,

---

[35] *Taylor v. Illinois*, 484 U.S. 400, 409–10 (1988).

[36] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

[37] *Id.*

confusion of the issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate."[38]  In considering whether the exclusion of evidence violates due process, this court must consider the probative value of the evidence on the central issue.[39]  Finally, assuming exclusion was error, it is subject to harmless-error analysis.[40]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[41]

As the California Court of Appeal applied the same standard as applied in the federal courts, this Court cannot say that the decision of that court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Rosen's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Rosen is not entitled to relief under his fourth ground.

---

[38] *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff,* 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

[39] *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007).

[40] *Neder v. United States*, 527 U.S. 1, 18 (1999).

[41] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[42] 28 U.S.C. § 2254(d).

<u>Ground 5:  Ineffective Assistance of Trial Counsel</u>.

Rosen argues that he was denied effective assistance of trial counsel when trial counsel failed to introduce evidence that one of the complaining witnesses had been caught on camera passing bad checks.  The California Court of Appeal rejected Rosen's arguments, holding:

> Defendant claims the trial court erred in denying defendant's motion for new trial on the ground of ineffective assistance of counsel.  He argues his trial counsel was ineffective in failing to present impeaching evidence that S.D. had been caught passing counterfeit checks.  We find no prejudicial error.

> In support of his motion for new trial, defendant presented the declaration of Lisha Karpay-Brody, a loss prevention department employee at Golden One Credit Union.  Ms. Karpay-Brody indicated she informed defense counsel in December 2003 or January 2004 that from her experience in fraud investigations, she recognized the name of S.D.  According to Golden One files, S.D. had deposited three counterfeit checks into her account in the amounts of $872, $25, $170, and $60, and one of these transactions had been recorded on a surveillance camera.  According to Ms. Karpay-Brody, a copy of the file was sent to the Sacramento Police Department. Despite providing this information to defense counsel, she received no further contact.

> In opposing the new trial motion, the prosecutor presented the declaration of investigator Kimberley Clark, who stated that she asked for a computer records check on S.D. from the Sacramento Police Department in October 2004, and was advised that there were four reports listing S.D. as a suspect in check frauds.  Clark also obtained a statement from S.D. admitting she used two fraudulent checks.  In addition, the prosecutor presented the declaration of Sacramento Police Department Lieutenant Milt Nenneman, who said the fraud charges against S.D. would not have been investigated because the amount of money involved was less than $5,000.

> Both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution provide that a defendant in a criminal trial has a right to effective assistance of counsel.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674, 691-692]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  In order to establish ineffective assistance of counsel, defendant must show (1) counsel's performance was deficient, and (2) in the absence of counsel's deficiency, it is reasonably probable defendant would have obtained a more favorable result.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1030-1031.)

> Where "'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (*In re Alvernaz* (1992) 2 Cal.4th 924, 945, quoting *Strickland v. Washington*, *supra*, 466 U.S. at p.

697 [80 L.Ed.2d at p. 699].)  "'Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]'"  (*In re Avena* (1996) 12 Cal.4th 694, 721.)

We need not decide whether it is conceivable that defense counsel felt there already was enough evidence impeaching S.D., and thus made a tactical decision not to present the evidence identified above.  This is so because, based on the totality of the evidence, we conclude it is not reasonably probable that defendant would have received a more favorable result if the impeaching evidence at issue had been presented to the jury.

Other impeaching evidence of significant value was introduced.  S.D. testified she was convicted in September 2001 of possessing cocaine for sale. And when she was contacted in connection with defendant's prosecution, she had a warrant out for her arrest for failing to appear in court.  S.D. also testified that she had filed a civil action against defendant and, thus, had a financial stake in his conviction.

Moreover, S.D.'s testimony was believable, despite her past bad acts involving moral turpitude, because the offenses that she described--defendant rubbing her breasts and forcing her to rub his penis over his pants--were similar to defendant's modus operandi, as reflected in the testimony of many other victims.

In light of the strong evidence of defendant's guilt and the other impeaching evidence presented with respect to S.D., we are convinced that it is not reasonably probable the jury would have rejected S.D.'s testimony if it had been told she was suspected of passing bad checks.  Therefore, defendant's claim of ineffective assistance of counsel fails.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Rosen must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[43]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[44]  Rosen must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for

---

[43] 466 U.S. 668, 687 (1984).

[44] *Id.*

counsel's ineffectiveness, the result would have been different.[45]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*:[46]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

The Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[47]  Nor can this Court find that the Court of Appeal unreasonably applied the correct legal principle to the facts of Rosen's case as required by *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  In particular, Rosen has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that he suffered prejudice as required by *Strickland* and *Hill*.

Rosen is not entitled to relief on his fifth ground.

---

[45] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[46] 466 U.S. at 689 (internal citations and quotation marks omitted)

[47] 28 U.S.C. § 2254(d).

Ground 6:  *Cunningham* Error.

Rosen argues that in sentencing him to the upper term on Count Two, the trial Court violated the mandate of the United States Supreme Court in *Cunningham v. California*.[48]  The California Court of Appeal rejected Rosen's arguments, holding:

>  We cannot say, as the People do, that if those two aggravating facts had been submitted to the jury, it unquestionably would have found them to be true and, thus, the *Apprendi/Blakely/Cunningham* error was harmless beyond a reasonable doubt.  However, the court cited a third reason for imposing the upper term on count two--it could have imposed a consecutive sentence for the misdemeanor conviction on count six, but did not do so. (Cal. Rules of Court, rule 4.421(a)(7) [factors in aggravation include that the "defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed"]; further rule references are to the California Rules of Court.)  In response to the prosecutor's inquiry, the court said it would impose the upper term based on this fact alone.  Thus, we turn to whether the use of this fact to impose the upper term ran afoul of *Apprendi*, *Blakely*, and *Cunningham*.

>  To qualify for a consecutive sentence, the count six conviction had to involve either (1) a criminal act and objective that were "predominantly independent of" the other crimes, or (2) a criminal act that was committed at a different time or in a separate place than the other crimes, "rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."  (Rule 4.425(a)(1) & (a)(3).)  Because the fact that defendant could have been given a consecutive term for count six was instead used to impose the upper term on count two, *Apprendi*, *Blakely*, and *Cunningham* require that at least one of the factors necessary to impose the consecutive sentence was submitted to the jury and found true beyond a reasonable doubt.

>  Defendant was convicted of three offenses involving victim S.D. Count six, misdemeanor sexual battery, was based on defendant touching S.D.'s breasts with his hand, over her clothing, while they were in the kitchen of her home. Count seven, felony sexual battery, was based on defendant taking S.D. into the garage of her home, lifting up her T-shirt, grabbing the nipples of her breasts with his hands, and pinching them while telling her how big her breasts were and saying that he wanted to suck them.  Count eight, felony assault by a public officer, was based on defendant taking S.D. into her mother's bedroom, telling S.D. that he wanted to "suck [her] big titties," grabbing her hand, and rubbing it across his penis over his clothing while saying that he wanted to "fuck" her.

---

[48] 549 U.S. 296 (2007).

S.D. testified that each offense occurred on a separate day in a separate place in her home.  Consequently, by convicting defendant of all three offenses, the jury necessarily found that the crimes were independent of each other and that they were committed at different times and in separate places, rather than during a single period of aberrant behavior.  (Rule 4.425(a)(1) & (a)(3).)  In other words, the facts justifying a consecutive sentence for count six were submitted to the jury and were found to be true beyond a reasonable doubt.  Thus, the fact that the court could have imposed a consecutive sentence on count six, but did not do so, could be used by the court to impose the upper term on count two, a crime against victim D.C., without violating the holdings of *Apprendi*, *Blakely*, and *Cunningham*.

Nevertheless, defendant argues that the decision not to impose a consecutive sentence for the misdemeanor conviction "cannot count as a reason to impose the upper term" for the felony count two conviction because, in his view, rule 4.421(a)(7) "was only intended to justify the imposition of an upper term where there is a consecutive state prison term available, but not utilized."  This is so because, in defendant's view, "consecutive county jail time could not have been imposed to a state prison term of this length (eight years, eight months without the upper term)" or, at least, "would be highly unusual[.]"  The contention fails because it is unsupported by any legal authority (*People v. Gurule* (2002) 28 Cal.4th 557, 618; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1159) and the language and purpose of the rule do not compel such an interpretation.  That the upper term for the felony resulted in a longer period of confinement than would have occurred if the court imposed a consecutive sentence for the misdemeanor does not aid defendant.  "Neither case law nor statutory authority restricts or precludes a sentencing judge from exercising discretion to impose a concurrent rather than a consecutive sentence for the purpose of lengthening a defendant's term of incarceration." (*People v. Lepe* (1987) 195 Cal.App.3d 1347, 1351.)

For the reasons stated above, imposition of the upper term for the count two felony conviction, based on the fact that the court could have imposed a consecutive sentence for the count six misdemeanor conviction but did not do so, did not run afoul of *Apprendi*, *Blakely*, and *Cunningham*.  Because the trial court indicated that this single factor in aggravation was sufficient to impose the upper term, the fact that other factors were not submitted to the jury is necessarily harmless. (See *People v. Cruz* (1995) 38 Cal.App.4th 427, 433 [single valid factor sufficient to justify upper term].)

In his petition before this Court Rosen argues that the California Court of Appeals erred in two respects: "(1) the misdemeanor conviction in Count Six was not 'other crimes [plural] for which consecutive sentences could have been imposed,' and (2) the trial court having based its

decision in part on forbidden *Cunningham* factors, could not parse its decision on the jury-determined factor of Count Six." (Alteration in the original.)

As noted above, the California Supreme Court granted review but subsequently dismissed citing *People v. Black*[49] and *People v. Sandoval*.[50] In *Sandoval*, the California Supreme Court found that the imposition of the upper term in that case imposed upon factors other than the defendant's criminal history, violated *Cunningham*, was subject to the harmless error rule but the error was not harmless beyond a reasonable doubt, and remanded for sentencing.[51] Because the California Court of Appeal rejected the State's "harmless error" argument, *Sandoval* has no application in this case.

The fatal flaw in Rosen's first argument is that it attacks the decision of the California Court of Appeal's interpretation of state (California) law, *i.e.*, the California Rules of Court. For the reasons stated above with respect to the second ground, that argument is not cognizable by this Court in a federal habeas proceeding.

Rosen's argument that the trial court could not "parse its decision" was answered in the negative by *Black II*. *Black II* held that the existence of a single aggravating factor established by a means that satisfied the requirements of the Sixth Amendment was sufficient to uphold a sentence imposed at the upper term.[52] *Black II* also noted that, in that case as in this case, the defendant's criminal history, the finding of which was by the court, not the jury, did not transcend *Cunningham*, supported the imposition of the upper term.[53]

Rosen cites no Supreme Court decision supporting his argument and independent research by the Court did not discover any such decision. In order to determine whether a state court failed to apply "clearly established federal law, as determined by the Supreme Court" for purposes of § 2254(d)(1), this Court must distinguish between situations where a legal principle

---

[49] 161 P.3d 1130 (Cal. 2007) (*Black II*).

[50] 161 P.3d 1146 (Cal. 2007).

[51] *Sandoval*, 161 P.3d at 1150.

[52] *Black II*, 161 P.3d at 1140–41.

[53] *Id.*, 161 P.3d at 1142.

established by a Supreme Court decision clearly extends to a new factual situation and where it does not.[54]  The Ninth Circuit has noted that a state court must apply legal principles established by a Supreme Court decision when the case "falls squarely within" those principles, but not in cases where there is a"structural difference" between the prior precedent and the case at issue, or when the prior precedent requires "tailoring or modification" to apply to the new situation.[55]

Applying those principles to this case, the Court cannot say the decision of the California Court of Appeal in this case or the California Supreme Court in *Black II* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Rosen's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Rosen is not entitled to releif under his sixth ground.

Ground 7:  Jury Misconduct.

Rosen simply alleges without recitation of supporting facts or further explanation that he was denied due process and the right to a jury trial as guaranteed by the Sixth Amendment by the denial of his request for mistrial on the basis that there had been jury misconduct in discussions of the case by alternate jurors, jurors, and non-jurors.  This ground is stated entirely in a conclusory manner unsupported by any factual or legal argument.  Although Rosen discusses the first six grounds at length in his 56-page Points and Authorities in Support of Application for Writ of Habeas Corpus, there is no discussion of this point.

The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[57]  If it plainly appears on the face of the petition that petitioner is not

---

[54] *Compare Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007) (where it did) to *Wright v. Van patten, supra,* and *Carey v. Musladin, supra* (where it did not).

[55] *Smith v. Patrick*, 508 F.3d 1256, 1259–60 (9th Cir. 2007).

[56] 28 U.S.C. § 2254(d).

[57] Rules—Section 2254 Cases, Rule 2(c).

entitled to relief, a district court must dismiss the petition.[58]  The district court may dismiss on this basis *sua sponte* after initial screening and an answer has been ordered and filed.[59]  As the Supreme Court has stated:[60]

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>
> > **"<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."**  Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition."  Rule 5(b).

It plainly appears from the petition that Rosen is not entitled to relief under his seventh ground.

---

[58] Rules—Section 2254 Cases, Rule 4.

[59] *See Day v. McDonough*, 547 U.S. 198, 207–09 (2006).

[60] *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

MEMORANDUM DECISION
*Rosen v. Martell*, 2:08-cv-00284-JWS                23

V.  CONCLUSION and ORDER

Rosen is not entitled to relief under any grounds raised in the petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition for a writ of habeas corpus under 28

U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[61]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter final judgment accordingly.

Dated:  February 24, 2009.

/s/ John W. Sedwick
JOHN W. SEDWICK
United States District Judge

---

[61] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

MEMORANDUM DECISION
*Rosen v. Martell*, 2:08-cv-00284-JWS                    24